UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JAMES WALSH,

    *Plaintiff*,

*v*.                                     CASE NO. 12-CV-15128

COMMISSIONER OF              DISTRICT JUDGE PATRICK J. DUGGAN
SOCIAL SECURITY,               MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and Disability

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Insurance Benefits ("DIB"), and for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 12, 14.)

Plaintiff Michael James Walsh was 50 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 66, 161.) Plaintiff's employment history includes 22 years of work as a "remove and repair tech" for an engine repair company. (Tr. at 196.) Plaintiff filed an application for benefits in August 2005. (Tr. at 53.) That application was denied at all administrative levels and after a hearing before Administrative Law Judge ("ALJ") Robert Karmgard, who issued his decision on April 1, 2009. (Tr. at 53-62.) Instead of perfecting appeal from that unfavorable decision, Plaintiff instead filed the instant claims on September 1, 2009, alleging that he became unable to work on June 4, 2004. (Tr. at 163-66, 167-68.) The claims were denied at the initial administrative stages. (Tr. at 63, 64.) In denying Plaintiff's claims, the Commissioner considered muscle/ligament disorder and fasci and affective disorders as possible bases for disability. (*Id.*) On October 28, 2010, Plaintiff appeared before ALJ Paul R. Armstrong, who considered the application for benefits *de novo*. (Tr. at 20-49, 66-83.)[2] In a decision dated October 28, 2011, the ALJ found that Plaintiff was not disabled. (Tr. at 79.) Plaintiff requested a review of this decision on September 10, 2012. (Tr. at 14-17.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on September 27, 2012, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On November 20, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

   B.   **Standard of Review**

---

[2]The previous decision issued by ALJ Karmgard on April 1, 2009, is *res judicata* as to the issue of whether Plaintiff was disabled as of April 1, 2009. *See infra.*

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d

3

at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

4

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.  Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

    **D.**    **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2009, and that Plaintiff had not engaged in substantial gainful activity since March 28, 2009, the amended alleged onset date due to the previous decision denying benefits dated April 1, 2009. (Tr. at 71; 50-62.) At step two, the ALJ found that Plaintiff's left arm crush injury with multiple surgical corrections was "severe" within the meaning of the second sequential step. (Tr. at 71-73.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 73.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 78.) At step five, the ALJ found that Plaintiff could perform a limited range of light work. (Tr. at 74-77.) The ALJ also noted that on the alleged disability onset date Plaintiff was 49 years old, which is defined as an individual closely approaching advanced age. (Tr. at 78.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 79.)

### E.     Administrative Record

#### 1.     Evidence Prior to April 1, 2009 (the date of ALJ Karmgard's decision)

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff suffered a crushing injury to his left wrist in 2004 and underwent a surgical technique fusion with bone graft on his left wrist in 2005 by Mehul Mehta, M.D. (Tr. at 287, 291, 336-37.) On February 16, 2006, Plaintiff underwent another surgery on his left wrist for "[r]emoval of deep-buried K-wires x 3, left wrist, and removal of hardware, left ulna with tendolysis of the extensor capri ulnas tendon." (Tr. at 334-35.) Plaintiff was treated for residual left wrist and hand pain since then by Dr. Mehta. (Tr. at 270-86.) An EMG taken on July 24, 2006, revealed neuropathy in Plaintiff's left ulnar nerve. (Tr. at 318.)

7

On February 23, 2009, Dr. Mehta prescribed Motrin and Darvocet for Plaintiff's left wrist pain and restricted Plaintiff to "no lifting more than 5 lbs, no power tools, no repetitive work, and assistive use of the left hand only." (Tr. at 269.)

**2.    Evidence After April 1, 2009**

Plaintiff was examined at the request of Disability Determination Services ("DDS") on October 14, 2009, by Gerald S. Kirzner, Ph.D. (Tr. at 229-32.) Dr. Kirzner diagnosed mood disorder with depressive features due to left arm surgeries and learning disorder. (Tr. at 231.) Dr. Kirzner concluded that Plaintiff "can retain and follow through with structured, concrete, repetitive simple tasks," but that "[h]igher order complex cognitive functioning has been compromised"; the doctor gave Plaintiff a "guarded" prognosis. (*Id.*)

A Physical Residual Functional Capacity ("RFC") Assessment completed on November 2, 2009, found that Plaintiff could occasionally lift 10 pounds, frequently lift 10 pounds, stand or walk about 6 hours, and sit about six hours in an 8-hour workday, noting that Plaintiff "can only lift a maximum o[f] two pounds occasionally with the non-dominant left upper extremity alone and lift/carry lighter items such as small hand tools or individual case files frequently." (Tr. at 259.) The assessment also found that Plaintiff should never climb ladders/ropes/scaffolds and should perform other postural tasks only occasionally. (Tr. at 260.) There were no manipulative, visual, communicative, or environmental limitations established. (Tr. at 261-62.) The assessment found Plaintiff's allegations to be inconsistent since he had no difficulty with personal care and stated he could drive and go out alone, yet he claimed that doing anything caused tremendous pain. (Tr. at 263.) The assessment also noted that Plaintiff's physical injuries were the same as those "used by the ALJ when making his decision 04-01-09" and that Plaintiff "has no new physical injury related to the one he has had an ALJ decision for and has not been seen by a Dr. for the injury

8

since the ALJ decision. Therefore, I am adopting the ALJ decision with respect to the ARM injury." (Tr. at 265.) The assessor noted that Plaintiff "does allege depression as a new impairment." (*Id.*)

A Mental RFC Assessment was completed on October 29, 2009, by F. Kladder, Ph.D. (Tr. at 234-36.) The assessment concluded that Plaintiff is moderately limited in his ability to understand, remember, and carry out detailed instructions, and in the ability to maintain attention and concentration for extended periods, but is otherwise not significantly limited in understanding and memory or sustained concentration and persistence. (Tr. at 234-35.) In addition, the assessment concluded that Plaintiff is not significantly limited in any areas under social interaction and adaptation. (Tr. at 235.) The assessment noted that Plaintiff "seems to do little of anything but this appears to be principally due to his hand and arm injury rather than from depressive disorder" and that he "appears to have limitations in dealing with detailed instructions due to his learning disability, [but] his mood does not appear to severely limit him and he appears to have the MRFC for simple unskilled work like activities." (Tr. at 236.)

A Psychiatric Review Technique completed on October 29, 2009, by Dr. Kladder diagnosed organic mental disorders and affective disorders, i.e., learning disability, and mood disorder with depressive features due to left arm surgeries. (Tr. at 237, 240.) Plaintiff was found to have mild limitations in activities of daily living and in maintaining social functioning, and moderate limitations in maintaining concentration, persistence or pace. (Tr. at 247.)

Plaintiff was examined by Shannon Webster, P.A., and Greg Naman, M.D., on December 31, 2009. (Tr. at 266-67.) Plaintiff indicated he was there to "fill out paper work" for disability and medicaid and because of wrist pain. (Tr. at 266.) Plaintiff was diagnosed with joint, hand, and arm pain, and carpal tunnel syndrome. (Tr. at 267.)

9

Dr. Mehta completed a Medical Assessment of Physical Ability to do Work Related Activities on August 12, 2010. (Tr. at 347-48.) Dr. Mehta indicated that Plaintiff should only occasionally lift 10 pounds with his right side only, that he cannot grasp or do fine manipulation with his left hand, but that he could use arm controls with both right and left arms. (Tr. at 347.)

Plaintiff underwent a consultative examination with M.S. Rosenberg, D.O., on August 12, 2010. (Tr. at 349-50.) Dr. Rosenberg stated that Plaintiff's "left wrist and hand were found to be in a fixed, atrophic, position and not really functional to any reasonable degree" and that "[t]here appeared to be essential normal motion of the right wrist and hand, however grip function was mildly decreased." (Tr. at 349.) Dr. Rosenberg concluded that "the medical conditions presented above, given their nature and severity, would be disabling. This disability would, in all likelihood, be considered total and permanent." (Tr. at 350.)

Plaintiff also underwent a consultative exam on September 23, 2010, with Habib Gennaoui, M.D. (Tr. at 351-66.) Dr. Gennaoui concluded that Plaintiff

> is suffering from multiple joint pain but his main problem is the left wrist due to numerous surgeries and due to surgical scar and he had a fused wrist. The patient's activity is none due to inability to use his left arm and left hand at all and also due to other joint pain.

(Tr. at 354.) X-rays taken that same day showed "mild osteoporosis" and some degenerative changes in Plaintiff's left wrist, "mild osteoporosis with mild degenerative changes in the lumbar spine[,]" and no significant abnormalities in his right or left knees or ankles. (Tr. at 364-65.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who

> [is] limited to light exertional abilities, only lifting ten pounds occasionally, or up to a maximum of two pounds occasionally with non-dominant left arm alone. Lift, carry lighter items such as small hand tools or individual case files frequently. Sit, stand, and walk, respectively, with normal breaks six hours in an eight hour day. No ropes, ladders, or scaffolds, can climb ramps and stairs, and can balance, stoop,

10

> kneel, crawl, crouch, crawl occasionally. let me limit -- let me do it light, basically, no more than two pounds with the left hand or arm, and occasionally he can do manipulative work frequently, I guess, without, you know, without lifting. Ten pounds maximum with both hands together, and no ropes; no climbing of ropes, ladders or scaffolds. The rest of the posturals would be occasional.

(Tr. at 40.) The VE responded that such a person could not return to Plaintiff's past relevant work but could perform the 1,000 usher jobs, 1,000 sorter and inspector jobs, and 1,500 machine tending jobs available in Southeast Michigan. (Tr. at 40-41.) If the exertional level were changed to sedentary, the VE indicated such a person could perform the 1,500 surveillance system monitor jobs which could performed with one arm. (Tr. at 41.) When asked by the ALJ, the VE responded that his testimony was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 39.)

### F. Analysis and Conclusions

#### 1. Legal Standards

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata*. *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989); *Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982). *See also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009). Therefore, ALJ Karmgard's decision is *res judicata* as to the issue of

whether Plaintiff was disabled as of April 1, 2009, the date of ALJ Karmgard's decision. (Tr. at 50-62.)

The ALJ determined that during the time Plaintiff qualified for benefits on his instant application for benefits, he possessed the residual functional capacity to perform a limited range of light work. (Tr. at 74-77.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that ALJ Armstrong utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that ALJ Armstrong's decision is not supported by substantial evidence. (Doc. 12.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that ALJ Armstrong's RFC assessment and resulting hypothetical were erroneous because the ALJ failed to incorporate Plaintiff's mental impairments

and because "light work" is inconsistent with the actual limitations the ALJ did incorporate. (Doc. 12 at 9-12, 14-15.) In addition, Plaintiff contends that the ALJ erroneously believed that "he was bound by the prior ALJ's RFC assessment, given extensive evidence of a progression of plaintiff's condition since the prior decision." (*Id*. at 13-14.)

### a. Prior RFC Assessment

Although Plaintiff argues that ALJ Armstrong thought he was "bound" by the prior ALJ's RFC assessment despite the "extensive evidence of a progression of plaintiff's condition," I suggest that Plaintiff's summation is less than fully accurate. (Doc. 12 at 13-14.) ALJ Armstrong told Plaintiff

> [t]here's nothing in the record on any of your lower extremity problems . . . [the ALJ then discussed illiteracy and how the regulation did not apply to Plaintiff] . . . So, let me do this, let me send you out for an evaluation. That evaluation, if it shows something, would be additional impairments and would get me past [the] decision of the prior judge, because it would be subsequent. I can't - - that prior judge did a very detailed examination. All the records that you sent to me are the same records that he examined. I just can't – I can't go over the past judge. I just can't do it.

(Tr. at 42-43.) Plaintiff's counsel then stated, "Yeah, the one thing that I would mention to the court, the x-rays that Dr. Rosenburg took in conjunction with his evaluation, he does indicate that there is osteoporosis . . . ." (Tr. at 43.) I therefore suggest that the ALJ Armstrong's comments that he couldn't "go over the past judge" relate exclusively to lower extremity problems. In addition, ALJ Armstrong attempted to resolve the evidentiary problem by sending Plaintiff for an evaluation. I note, however, that no evaluations were conducted and submitted to the ALJ after the hearing.

When Plaintiff mentioned his impairments with his hand and "major temperature changes," ALJ Armstrong stated, "I understand what you're telling me. . . . I need somebody to examine you and make that diagnosis, okay, and I didn't see anything from the guy who saw you recently . . .

so I'm really in a bind unless I get some new evidence in this case, which I'm going to send you out and see if I can get some, Okay? But that's the best I can do." (Tr. at 44-45.)

I suggest that the ALJ Armstrong's comments, in total, illustrate that the ALJ found the prior judge's findings to be worthy of deference in the absence of any new evidence that Plaintiff's condition had progressed or additional severe impairments caused his condition to worsen. According to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997), the Commissioner is bound by a prior final decision determining whether a claimant is entitled to benefits absent "changed circumstances." *Id.* at 843-44. Acquiescence Ruling ("AR") 98-4(6) implements *Drummond* by directing that courts adopt the findings from a final decision by an ALJ on a prior claim unless there is new and material evidence relating to such finding. In the instant case, ALJ Armstrong expressly considered the evidence of record after April 1, 2009. (Tr. at 75-76.) Although perhaps not artfully stated, I suggest that ALJ Armstrong was operating under the proper principle set forth in *Drummond* and AR 98-4(6) and that there was no error in his approach. Plaintiff, of course, disagrees with ALJ Armstrong's conclusion and would have preferred that the ALJ find that Plaintiff's condition had progressed and now included more severe impairments as to his lower extremity and hands; however, disagreement with the conclusion does not render the decision-making process erroneous.

   **b.** **Current RFC Assessment and Classification of Jobs**

Plaintiff contends that ALJ Armstrong's RFC assessment and resulting hypothetical were erroneous because the ALJ failed to incorporate Plaintiff's mental impairments and because "light work" is inconsistent with the actual limitations the ALJ did incorporate where the "lifting restrictions went outside the range of light work and, instead, equated with sedentary work." (Doc. 12 at 9-12, 14-15.) First, I note that the ALJ asked the VE to consider jobs available if the

exertional level were changed to sedentary, and the VE indicated such a person could perform the 1,500 surveillance system monitor jobs which could be performed with one arm. (Tr. at 41.)

Plaintiff's counsel had an opportunity and exercised that opportunity to inquire into the specific requirements of the jobs listed by the VE. However, counsel did not identify the conflicts he now raises. This alone is fatal to his argument. *See Aho v. Comm'r of Soc. Sec.*, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011) (citing *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) ("Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late.")).

In addition, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 179 F. App'x 369, 374 (6th Cir. 2006). Therefore, I suggest that the ALJ was not under any obligation to inquire further into the accuracy of the VE's testimony beyond asking whether the VE's testimony was consistent with the DOT and receiving the VE's response that it was. *See Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("Nothing in the applicable Social Security regulations requires an administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy"). I therefore suggest that ALJ Armstrong did not commit any error undermining the substantial evidence that supports the decision.

I further suggest that even assuming, *arguendo*, that the ALJ had an obligation to inquire further into the classification of the light exertional level jobs challenged by Plaintiff, the VE's testimony regarding the sedentary level job, i.e., surveillance system monitor, remains unchallenged and would, by itself, provide substantial evidence for the ALJ's conclusion that Plaintiff was not disabled. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) (noting that the ALJ had no affirmative duty to investigate whether VE was correct where the plaintiff did not bring

15

any conflict to his attention and finding substantial evidence satisfied where, "even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have found that [the plaintiff] could perform the third position").

I further suggest that the overall RFC analysis is supported by substantial evidence of record. As to mental impairments, despite Plaintiff's diagnosed mood disorder with depressive features and learning disorder, Dr. Kirzner concluded that Plaintiff "can retain and follow through with structured, concrete, repetitive simple tasks," although "[h]igher order complex cognitive functioning has been compromised." (Tr. at 231.) In addition, Dr. Kladder concluded in the mental RFC Assessment that Plaintiff "seems to do little of anything but this appears to be principally due to his hand and arm injury rather than from depressive disorder" and that although he "appears to have limitations in dealing with detailed instructions due to his learning disability, his mood does not appear to severely limit him and he appears to have the MRFC for simple unskilled work like activities." (Tr. at 236.) Finally, Dr. Kladder also found that Plaintiff had only mild limitations in activities of daily living and in maintaining social functioning. (Tr. at 247.)

As to physical impairments, ALJ Armstrong incorporated the limitations as to Plaintiff's left arm and hand as delineated in the RFC Assessment. (Tr. at 73, 259.) In his medical source statement, Plaintiff's treating physician, Dr. Mehta, indicated that Plaintiff should be limited to occasional lifting of 10 pounds with his right side only, but he also found that Plaintiff could grasp and do fine manipulation with his dominant right hand and that Plaintiff could use arm controls on both the left and right sides. (Tr. at 347-48.) There is nothing in Dr. Mehta's statement that equates with disability. I therefore suggest that Plaintiff's treating physician's statements about Plaintiff's physical ability to work support the ALJ's conclusion that Plaintiff is not disabled.

16

I note that the conclusions of the examining physicians as to whether Plaintiff is disabled are not entitled to any special significance since the Commissioner is responsible for determining whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(d)(3).

### 3. Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                      s/ **Charles E. Binder**
                                                     CHARLES E. BINDER
Dated: October 17, 2013                      United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: October 17, 2013                                By     s/Patricia T. Morris
                                                                                 Law Clerk to Magistrate Judge Binder